No. 14587

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

BONNIE FORD,

            Plaintiff and Respondent,

    -vs-

THE UNIVERSITY OF MONTANA,
and MISSOULA TYPOGRAPHICAL
UNION NO. 277,

            Defendants and Appellants.

Appeal from:  District Court of the Fourth Judicial District,
              Honorable Edward Dussault, Judge presiding.

Counsel of Record:

    For Appellants:

        Steven A. Veazie argued, Helena, Montana
        Skelton and Knight, Missoula, Montana
        Robert Skelton argued, Missoula, Montana

    For Respondent:

        Jon E. Ellingson argued, Missoula, Montana

                            Submitted:  June 12, 1979

                            Decided AUG - 9 1979

Filed: AUG - 9 1979

_Thomas J. Kearney_
                                    Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The plaintiff, Bonnie Ford, brought this action against her public employer, the University of Montana (University), and her exclusive collective bargaining unit, the Missoula Typographical Union No. 277 (Union). Bonnie Ford claimed that she was wrongfully assigned to a night shift by the Union and wrongfully terminated from employment by the University when she refused to work the night shift. Before the plaintiff presented any evidence, the defendant Union moved the District Court to dismiss for lack of jurisdiction. At the close of plaintiff's case, the defendant Union moved the District Court to dismiss as to the defendant Union because the plaintiff had not introduced any evidence which showed that the Union breached any duty it owed to plaintiff. Both motions were denied. The case was tried without a jury and judgment was entered for plaintiff Bonnie Ford and against the Union and the University. Plaintiff was awarded monetary damages for lost wages and benefits. The Union and the University appeal from this judgment.

On November 1, 1972, plaintiff Bonnie Ford was hired as an apprentice by the University of Montana Print Shop. On November 13, 1972, another worker, Al Devore was hired at the Print Shop. Devore had been a journeyman printer since 1948.

Workers at the University Print Shop were represented at all times relevant to this case by defendant Union. At the time Bonnie Ford and Al Devore were hired, the bylaws of the International Typographical Union (ITU) were such that apprentices had no "priority standing", that is, no seniority for choice of jobs, and other privileges until completion of their apprenticeship and attainment of journeyman status. On January 1, 1973, however, the bylaws of the ITU were amended so that apprentices were granted priority standing at the beginning of their second

year of apprenticeship on November 1, 1973. Under the amended bylaws, she thus attained priority status as of that date. Al Devore, a journeyman when he was hired, had priority status as of the date of his hiring, November 13, 1972.

In 1975, the University and the Union entered into negotiations for a new Collective Bargaining Agreement. Under the new agreement executed on October 28, 1975, premium pay for night shift work was eliminated. Therefore, in order to allow employees of senior status who had chosen night jobs for the extra pay to change jobs if they so desired, all jobs were declared open to be reassigned in order of choice by seniority. Article VI, section E of the new agreement provided for this procedure as follows:

> "(Shift and Vacation Preference) Employees may claim new shifts, new starting times, new slide days, if qualified, and have choice of vacation schedules, in accordance with their seniority standing. Upon execution of this agreement, and for one time only, the board will be opened and employees may claim existing day or night shift situations in accordance with their seniority."

Other pertinent provisions in the new agreement in this regard were:

> "ARTICLE I - Recognition
>
> "The Employer recognizes the Union as the exclusive bargaining representative of all employees covered by this agreement, the words 'employee' and 'employees' when used in this contract apply to journeymen and apprentices." (Emphasis added.)

> "ARTICLE VI - Seniority and Probation
>
> "Section A. (Seniority) Seniority means an employee's length of continuous service with the Employer since his last date of hire. An employee's seniority shall be broken only by termination of employment or a layoff which exceeds six (6) calendar months. Employees who are laid off and request payment of unused sick leave and/or withdrawal of PERS contributions shall be considered as having terminated employment." (Emphasis added.)

On November 1, 1975, Bonnie Ford acquired journeyman status. On the same day, the Union posted the priority standings listing Al

Devore as senior to Bonnie Ford. Both Devore and Ford requested day shift positions. The last day shift job went to Devore and Ford was placed on the night shift.

Working the night shift did not agree with Bonnie Ford. She began suffering from general malaise, insomnia and depression. After having worked the night shift for approximately a year, plaintiff was advised by her physician that her symptoms would not improve unless she could get placed on day shift or find another job at which she could work daytime hours.

In the meantime, plaintiff had been designated as Chapel Chairman, or representative for the Union, at the University Print Shop. In conjunction with the duties of Chapel Chairman, in December, 1976, plaintiff requested and obtained from the Print Shop a list of the dates of hiring of all the employees. She discovered that she had been hired before Al Devore and concluded that under the new agreement she rather than he should have been awarded the last day shift job. Shortly thereafter, she advised the president of the local Union and the University that she believed her seniority to be greater than that of Al Devore and that she should be given a day job.

On March 2, 1977, plaintiff filed a grievance, through her attorney, with the Union. A special meeting of the Union was immediately held, with plaintiff in attendance, where her grievance was discussed. The members concluded that Al Devore had greater seniority than plaintiff and the plaintiff's claim was barred in any event by a clause in the agreement that grievances must be submitted within twenty days after the occurrence of the event giving rise to the grievance. The members voted by majority vote to reject the grievance as without merit. After this meeting, the president of the local Union advised plaintiff she could write to the International for a further opinion, but this plaintiff did not do.

- 4 -

On February 22, 1977, plaintiff stopped going to work. She requested sick leave, but her sick leave had previously been used up. On March 23, 1977, the manager of the print shop informed plaintiff by letter that her continued absence was causing a serious personnel shortage and that if she did not return to work on her normal shift by April 4, 1977, she would have to be terminated and replaced. Plaintiff did not return and was terminated on the date specified. On April 29, 1977, plaintiff began a new job working the day shift at Gateway Printing Company (Gateway) in Missoula, Montana.

Plaintiff's complaint in this matter was filed on April 6, 1977. The central allegation is that "because of being forced to work the night shift, the Plaintiff has suffered extreme mental strain and emotional distress which manifest themselves in physical disorders; that she has advised the Defendants of these problems but the Defendants have failed and refused, and continue to fail and refuse, to provide her with a day shift position which selection by seniority would have provided her." The prayer for relief requests, in pertinent part, that "Defendants be enjoined to employ plaintiff on the day shift" and that plaintiff recover lost wages from February 22, 1977, the day she stopped going to work.

After a period of discovery, trial of the matter was held before Judge Edward T. Dussault, sitting without a jury, on February 9, 1978. At the start of trial, counsel for defendant Union moved to dismiss the case for lack of jurisdiction on the grounds that plaintiff, an employee of the State of Montana, had not presented her grievance to the Board of Personnel Appeals, and thus had failed to exhaust her administrative remedies. The motion was denied and trial proceeded.

Subsequent to trial, on June 13, 1978, findings of fact and conclusions of law were entered identical to proposed findings

- 5 -

and conclusions submitted by plaintiff, granting all the relief requested in the complaint. Both defendants thereafter submitted motions to amend, and defendant University also moved for a new trial. Argument on the motions was had on July 31, 1978, and it was orally stipulated that the findings and conclusions reinstating plaintiff in her job and ordering her to be given a day shift position be deleted. The motion to amend was otherwise denied, as was the motion for new trial. Judgment was entered for plaintiff for lost wages due to sickness attributable to forced night work; lost wages from January 1, 1977 to April 29, 1977 (the period wherein the plaintiff was absent from work for a substantial amount of time until she found new employment at Gateway); and for lost sick leave and vacation benefits, all in the total sum of $4,470.25. From that judgment, defendants appeal.

The issues presented on appeal are:

By appellant Union:

(1) Whether the District Court erred in denying the Union's motion to dismiss for lack of jurisdiction.

(2) Whether the District Court's finding that the Union had breached a duty to plaintiff, and the consequent denial of the Union's motion to dismiss at the close of plaintiff's case, was supported by substantial evidence.

(3) Whether the District Court erred (a) in making certain conclusions of law, and (b) in failing to make certain findings of fact.

By appellant University:

(4) Whether the District Court erred in its conclusion of law that plaintiff's employment had been wrongfully terminated by the University, entitling her to lost wages and benefits.

(5) Whether lost wages and benefits were not recoverable in any event because the circumstances giving rise to the

- 6 -

loss here were neither contemplated by the parties to the collective bargaining agreement nor likely to result from its alleged breach.

There is no disagreement here as to whether Bonnie Ford is a public employee covered by Title 39, Chapter 31 MCA, "Collective Bargaining for Public Employees." The issue is whether under these circumstances that Act is plaintiff's exclusive remedy. Unfair labor practices by labor organizations for which the Act provides a remedy are defined at section 39-31-402 MCA as follows:

> "Unfair labor practice of labor organization. It is an unfair labor practice for a labor organization or its agent to:
>
> "(1) restrain or coerce employees in the exercise of the right guaranteed in 39-31-201 or a public employer in the selection of his representative for the purpose of collective bargaining or the adjustment of grievances;
>
> "(2) refuse to bargain collectively in good faith with a public employer if it has been designated at the exclusive representative of employees;
>
> "(3) use agency shop fees for contributions to political candidates or parties at state or local levels."

There is no prior Montana case law construing this provision. The plain meaning on a fair reading of this provision, however, indicates that it does not contemplate the situation presented here as one for which the Act provides a remedy. Section 39-31-201 MCA referred to in the provision is the statute protecting the right of public employees to self-organize. This case does not involve a situation where plaintiff was denied her right "to form, join or assist any labor organization", or where she was denied any of her other rights protected by section 39-31-201, MCA. This is not a case where the Union has refused to bargain collectively in good faith with a public employer, or has misused shop fees. Defendant Union's argument that the District Court had no jurisdiction here because plaintiff's exclusive remedy

- 7 -

was under the Collective Bargaining for Public Employees Act lacks merit; that Act, in fact, provides no remedy at all for the controversy at issue here. In essence Bonnie Ford is charging that the Union breached a duty it owed to her by its failure to fairly represent her grievance. Section 39-31-402, MCA does not encompass this situation.

Plaintiff further argues that the District Court had jurisdiction by analogy to 29 U.S.C. §158(b) of the National Labor Relations Act (NLRA). The language in section 39-31-402 closely parallels certain portions of that section of the NLRA. The United States Supreme Court has held in Vaca v. Sipes (1967), 386 U.S. 171, 87 S.Ct. 903, 17 L Ed 2d 842, that the preemption doctrine is not rigidly applied to cases in which it cannot be inferred that Congress intended exclusive jurisdiction to lie with the NLRA. 386 U.S. at 179. The preemption doctrine is a doctrine whereby the state and federal courts will not assume jurisdiction over suits directly involving "activity [which] is arguably subject to §7 or §8 of the [NLRA]." San Diego Building Trades Council v. Garmon (1959), 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L Ed 2d 775, 783. Vaca allowed an employee access to the courts to pursue a remedy for an alleged breach of duty by a Union in wrongfully refusing to process a grievance, which is similar to the facts of the instant case. Vaca and its progeny however, are questionable authority for jurisdiction in the state District Court here because they involve section 301 of the Labor Management Relations Act, 29 U.S.C. §185. That statute gives venue to District Courts of the United States in "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . ." Section 301 "carves out exceptions to the [NLRA's] exclusive jurisdiction," Vaca, 386 at 179, and "permits suits for breach

- 8 -

of a collective bargaining agreement regardless of whether the particular breach is also unfair labor practice within the jurisdiction of the Board." Vaca, 386 U.S. at 179-80. Therefore, federal labor law grants jurisdiction to the federal courts in certain situations where Montana law does not grant jurisdiction to state courts because Montana does not have a statute that parallels §301.

In Vaca, the Court decided to "assume for present purposes that such a breach of duty of fair representation by the union [in its handling of an employee's grievance] is an unfair labor practice" within the meaning of 29 U.S.C. §158(b). 386 U.S. at 186. If this Court were to hold that a breach of duty was an unfair labor practice within the meaning of /section 39-31-402, MCA, the District Court would be denied jurisdiction in this case because Montana does not have a statute that parallels §301. It must be noted, however, that the provisions defining unfair labor practices in 29 U.S.C. §158(b) are very comprehensive and cover a much broader scope than does section 39-31-402 which is limited to three circumstances which may be more strictly construed than the federal law. Therefore, we reject the assumption that refusal to process a grievance is an unfair labor practice within the meaning of section 39-31-402 and hold that the District Court had jurisdiction in this matter.

We next face the issue of whether the Union breached a duty which it owed to Bonnie Ford. We have decided above that a failure to represent is not an unfair labor practice under section 39-31-402; however, section 39-31-205, MCA, provides the standard of duty the Union owed its members, viz. that it may not discriminate between its members in its duty to fairly represent the member's grievance.

To impose such a duty is to protect "an individual employee

- 9 -

from arbitrary abuses of procedures for the settlement of grievances by providing him with recourse against both his employer and the union." 48 Am Jur 2d Labor and Labor Relations § 398. In order to hold a union liable for breach of this duty in regard to processing employee grievances, most cases require a finding of fraud, arbitrariness, bad faith, or other misconduct with respect to its handling of a grievance. Annot. 34 ALR3d 884. Although the United States Supreme Court's decisions in this area are not binding on this Court because they are construing a different statute, the standard which they have adopted in fair representation cases is persuasive. In Hines v. Anchor Motion Freight, Inc. (1976), 424 U.S. 554, 96 S.Ct. 1048, 47 L Ed 2d 231, the Court discusses the case of Humphrey v. Moore (1964), 375 U.S. 335, 84 S.Ct. 363, 11 L Ed 2d 370. In Hines, the Court states:

> "Our conclusion in [Humphrey v. Moore] was not that the committee's decision was un-reviewable. On the contrary, we proceeded on the bases that it was reviewable and vulnerable if tainted by breach of duty on the part of the union, even though the employer had not conspired with the union. The joint committee's decision was held binding on the complaining employees only after we determined that the Union had not been guilty of malfeasance and that its conduct was within the range of acceptable performance by a collective bargaining agent . . ." 424 U.S. at 568. (Emphasis added.)

In short, the Court has to find that the Union's action was in some way a product of bad faith, discrimination, or arbitrariness. See Ruzicka v. General Motors Corp. (1975, 6th Cir.), 523 F.2d 306. The following is a general statement of this principal of law and the policy which underlies it.

> " . . . A union's action is non-arbitrary and in performance of its duty of fair representation to members where such action is based upon relevant, permissible union factors which exclude the possibility of its being based upon motivations such as personal animosity or political favoritism, where it is a rational result of consideration of those factors, and where it includes fair and impartial

consideration of the interests of all employees.

"There is no breach of a collective bargaining agent's duty of fair representation in taking a good-faith position contrary to that of some individuals whom it represents, or in supporting the position of one group of employees against that of another." 48 Am Jur 2d Labor and Labor Relations §398.

"A wide range of reasonableness must be allowed to a statutory bargaining representative in serving the unit it represents, subject always to its complete good faith and honesty of purpose in the exercise of its discretion. A union has great discretion in processing its members grievances, and only in extreme cases of abuse of discretion will the court interfere with the union's decision; in certain cases some individual rights may be compromised for the greater good of the members as a whole . . ." 48 Am Jur 2d Labor and Labor Relations §399.

"Although a union breaches its duty of fair representation by arbitrarily ignoring a meritorious grievance, or processing it in a perfunctory way, a union does not breach its duty of fair representation merely because it settles a grievance short of the final grievance procedure step of arbitration, even if a court should later decide that the grievance was meritorious. And although the ignoring or perfunctory processing of a grievance may violate the duty of fair representation, such duty does not require a union to exhaust every theoretically available procedure simply on the demand of a union member, the decisive question being whether the union's conduct is arbitrary, discriminatory, or in bad faith. In its role as the exclusive agent for all employees in a bargaining unit, the union has the power to sift out frivolous grievances, abandon the processing of a grievance which it determines in good faith to be meritless, and to settle a dispute with the employer short of arbitration . . ." 48 Am Jur 2d Labor and Labor Relations §401.

In the instant case, the complaint does not allege any fraud or bad faith on the part of the Union. Nor was there any evidence presented at trial that the vote of the Union members, which determined that plaintiff's grievance was without merit, was in any way improper, dishonest, or the product of bias or conclusion. There must be evidence that would support a conclusion that one of these elements tainted the Union vote. The mere fact that Bonnie Ford disagrees with the decision of the Union is not sufficient basis for a finding of breach of the duty of fair

representation absent these factors.  Annot. 34 ALR3d 884 §7.

Defendant Union's motions to dismiss at the close of plaintiff's case should have been granted.

The central problem in this case is the District Court's conclusion that Bonnie Ford had greater seniority than Al Devore under the new Collective Bargaining Agreement.  Before the new agreement went into effect, length of job service was referred to within the Union in terms of "priority".  It is undisputed that under that system, Al Devore, a journeyman, had "priority" as of his date of hire, November 13, 1972, and plaintiff did not get "priority" until commencement of her second year of apprenticeship on November 1, 1973.  Under the new agreement effective July 1, 1975, however, the term "seniority" was used and was defined as "an employee's length of service from date of hire."  The new agreement does not differentiate between apprentices and journeymen.  Plaintiff was hired as an apprentice before Al Devore was hired as a journeyman.  Thus, the issue is whether the new collective bargaining agreement abrogates the previously followed priority system and replaces it with something different so that plaintiff now has a higher choice-of-job status?  The vote of the Union members rejecting plaintiff's grievance indicates that they concluded it did not.

In the previous issue it has held that a Union will not be liable for refusing to process a grievance so long as such a refusal is not arbitrary, the product of bad faith, or discriminatory.  Similarly, a Union may interpret its own union rules and this will not be overturned by the courts unless there is some fact presented which would show that interpretation was tainted. "The construction of a union's constitution and laws is for the union, through its appropriate board or officers; and the courts will accept such construction in the absence of fraud, illegality

or improper exercise of the power of construction." 87 C.J.S. Trade Unions §13. "The constitution and bylaws of a union cannot retroactively infringe established rights."

" . . . [T]he interpretation of rules fixing the seniority rights of members will not be interfered with by the courts where it appears that the construction placed thereon is a reasonable one, arrived at in good faith and in a legal decision . . ." 87 C.J.S. Trade Unions §38.

The meaning of provisions in collective bargaining agreements may be construed according to existing circumstances and condition. "The court has no power to read into the contract any terms or conditions with respect to seniority which were not comprehended and intended by the parties when contracting. On the other hand it is proper to look to the common law of the shop to bring to bear those considerations which were not expressed in the contract as criteria for judgment. Seniority provisions should be construed in an objective manner, in the light of the surrounding circumstances, the nature of the operations contemplated and regulated thereby, and the objects sought to be accomplished . . ." 51 C.J.S. Labor Relations §251.

Plaintiff here introduced no evidence that the parties to the new agreement intended to restructure their choice-of-job status. On the contrary, the only testimony on this point was that there was no such intention. Even though the new agreement may on its face appear to redefine the matter, the Union membership chose to interpret it differently. In the absence of some evidence that the vote was tainted by bad faith, or that it was discriminatory, or arbitrary, the Union's interpretation of its own documents must stand. Under the foregoing authorities, the conclusion that plaintiff had preference over Al Devore was error.

The remaining issues raised by the Union are likewise

meritorious. They flow from our resolution of the preceding issues in defendant Union's favor. Having so resolved that issue, under such circumstances further detailed discussion of the alleged errors would be superfluous.

The next issue is whether Bonnie Ford was wrongfully terminated. Plaintiff absented herself from work on the strength of her belief that she had been wrongfully deprived of a day shift job. The foregoing discussion indicates that plaintiff was wrong in this belief. Plaintiff also maintains that her absence was at the advice of her doctor and was therefore "sick leave". However, testimony at trial established that plaintiff had exhausted her sick leave and that her absence from work was not authorized. There is a provision in the Collective Bargaining Agreement that if the employee has exhausted her sick leave, absence may be charged to vacation or leave without pay at her option. However, this provision still requires approval by the employer, which was neither sought nor given here. The evidence shows that plaintiff was terminated only after full compliance with the termination requirements of the agreement. The conclusion by the trial court that the University wrongfully terminated plaintiff is not supported by the evidence. Hence, this conclusion of law is error and must be vacated.

The final issue raised by the University concerning lost wages and benefits is moot in view of our holding that plaintiff was not wrongfully terminated.

In summary, the District Court's findings and conclusions in this case are not supported by the evidence. There is no evidence that the Unions rejection of plaintiff's grievance was arbitrary or in bad faith. The construction placed on the new seniority provision by the Union was consistent with a long established practice and was a reasonable and fair conclusion. It

is unfortunate that plaintiff suffered ill effects from her night shift job, but her attempt at forcing the union to adopt her construction of the new agreement lacks merit. Even though her construction of the agreement is plausible, it was not the one intended by the Union members, as evidenced by their vote on the matter. Plaintiff's illnesses were a consequence of a job assignment properly given to her, rather than the result of any wrongful act of either of the defendants.

Reversed and dismissed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices