No. 81-129

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

TEAMSTERS, LOCAL #45, Affiliated with
International Brotherhood of Teamsters,
Chauffeurs, Warehouseman & Helpers of
America,

          Petitioner and Respondent,

    -vs-

STATE OF MONTANA, ex rel., BOARD OF
PERSONNEL APPEALS and STUART THOMAS
McCARVEL,

          Respondents and Appellants.

---

Appeal from:  District Court of the First Judicial District,
             In and for the County of Lewis & Clark,
             The Honorable Peter Meloy, Judge presiding.

Counsel of Record:

    For Appellants:

            James Gardner, Jr., Helena, Montana
            Patrick F. Flaherty, Boulder, Montana

    For Respondent:

            Hilley & Loring, Great Falls, Montana

---

Submitted on Briefs:  July 24, 1981

Decided: NOV 9 - 1981

NOV 9 - 1981

Filed;

*Thomas J. Kearney*
                Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Appellant began this action in August 1977 by filing with the Board of Personnel Appeals (BPA) an unfair labor practice charge, alleging that respondent union had breached its duty of fair representation.

Appellant was hired by the Great Falls Public Library as a bookmobile driver on February 10, 1976. He performed some clerical work in addition to his actual driving of the bookmobile. As a bookmobile driver, appellant was represented by the respondent union for collective bargaining purposes.

Upon receipt of his first paycheck, appellant discovered that he was paid for twenty hours per week as a driver and twenty hours per week as a clerk. A clerk's pay was $1.60 per hour less than a driver's pay.

Concerned about his wages, appellant requested the union to file a grievance on his behalf. He made similar requests periodically from March 1976 to March 1977. The union continually refused to file a grievance stating that such a grievance would simply not be successful because the union and the city had a long-standing oral agreement that the drivers of the bookmobiles would be paid half-time as drivers and half-time as clerks.

On August 8, 1977, the BPA received appellant's charges that the union had breached its duty of fair representation.

The hearing examiner for the BPA concluded that the union had breached its duty of fair representation by failing to accept and process appellant's grievance. The hearing examiner's decision was upheld by the BPA on appeal,

but in October 1979 the union petitioned for a rehearing before the BPA in light of the case, Bonnie Ford v. University of Montana (1979), _____ Mont. _____, 598 P.2d 604, 36 St.Rep. 1485. On rehearing the BPA found that the Ford case did not affect its prior ruling and reaffirmed appellant's claims against the union.

The union then appealed to the District Court of the First Judicial District, County of Lewis and Clark. On November 7, 1980, the District Court, basing its conclusion on Ford, held that the BPA lacked jurisdiction to hear claims arising from alleged breaches of fair representation. Appellant and the BPA now appeal the holding of the District Court.

The single issue before this Court is whether, in light of the Ford decision, the BPA lacks jurisdiction to decide claims that a union has breached its duty of fair representation.

In Ford the plaintiff filed a grievance with her union concerning seniority status. A special meeting was held and the union members, interpreting their own collective bargaining agreement, decided that the plaintiff did not have the seniority she claimed. The majority of the union rejected her grievance.

The plaintiff in Ford then filed a complaint in state District Court. The union moved for dismissal on the grounds that the plaintiff must bring her claim initially before the BPA and exhaust her administrative remedies. The District Court denied the motion, and this was one issue of error on appeal to this Court.

We ultimately decided in Ford that the District Court

did have jurisdiction to hear Ford's complaint. We do not intend in any way by this present decision to alter the rule of Ford which recognizes original jurisdiction in the state District Courts to decide questions of fair representation. This Court still recognizes the actual holding in Ford.

There is certain dicta in Ford, however, that we can no longer recognize. In reasoning that the District Court had jurisdiction to hear the Ford case initially, this Court stated that a breach of the duty of fair representation cannot be considered an unfair labor practice within the meaning of section 39-31-402, MCA. Section 39-31-402, MCA, which defines a union's possible unfair labor practices, was found not to apply to an allegation that a union has failed to fairly represent a member. In Ford we looked only to the plain meaning of the statutes from the Montana Public Employees' Collective Bargaining Act, disregarding federal precedent, which does recognize that a breach of the duty of fair representation is an unfair labor practice, as a violation of section 8(b)(1)(A) of the National Labor Relations Act (NLRA), 29 USC §158(b)(1)(A).

Federal precedent was called "questionable authority" by this Court in Ford because of the way we interpreted the language of the leading case, Vaca v. Sipes (1967), 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842. Upon a closer examination of Vaca, we are persuaded that it was not interpreted accurately by this Court in Ford.

In Ford, we incorrectly assumed that the reason federal courts assumed jurisdiction over fair representation cases was because of the presence of section 301 of the Labor Management Relations Act (LMRA), 29 USC §185. In

-4-

dicta, we reasoned that, "If this Court were to hold that a breach of duty of fair representation was an unfair labor practice within the meaning of section 39-31-402, MCA, the District Court would be denied jurisdiction because Montana does not have a statute that parallels § 301." 598 P.2d at 609.

We now are persuaded that Vaca did not stand for the proposition that section 301 alone grants original jurisdiction to the federal courts in cases of fair representation. Section 301 is silent on unfair labor practices; it goes solely to enforcement of contracts where there has been a breach of a contract obligation. Vaca held that federal courts had jurisdiction in fair representation cases because the policy reasons underlying application of the preemption doctrine were overridden by other considerations. The Court mentioned as an aside that in many cases where a breach of fair representation is an unfair labor practice, the union may also be sued for breach of contract under section 301.

Our reasoning in Ford for not looking to federal precedent was, therefore, based upon what we now believe was an inaccurate reading of Vaca. As in all other cases except Ford where we have interpreted the Public Employees' Collective Bargaining Act (the Act), we now look to NLRB and federal interpretation of the NLRA for guidance in interpreting this Act. For cases where we have found it appropriate for the BPA and this Court to consider NLRB precedents in interpreting and administering the Act, see State ex rel. Board of Personnel Appeals v. District Court (1979), _____ Mont. _____, 598 P.2d 1117, 36 St.Rep. 1531;

State ex rel. Dept. of Highways v. Public Employees Craft Council (1974), 165 Mont. 349, 529 P.2d 785; Local 2390 of Amer. Fed. etc. v. City of Billings (1976), 171 Mont. 20, 555 P.2d 507.

Moreover, while other dicta in Ford suggested that we look to the plain meaning of section 39-31-402, MCA, concerning possible unfair labor practices by a union, we now acknowledge that this section must be read in light of the several sections of the Act defining the duty of a union as an exclusive representative, guided by NRLB interpretations of like statutes.

Section 8(b)(1)(A) of the NLRA, 29 USC §158(b)(1)(A), provides in pertinent part:

> "(b) It shall be an unfair labor practice for a labor organization or its agents -- (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7 . . ."

Section 7 of the NLRA, 29 USC §157, provides:

> "Employees shall have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any and all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3)."

The above-quoted sections are very similar to the statutes in Montana's Public Employees' Collective Bargaining Act:

> "It is an unfair labor practice of a labor organization or its agents to:
>
> "(1) restrain or coerce employees in the exercise of the right guaranteed in 39-31-201 . . ." Section 39-31-402, MCA.

-6-

"Public employees shall have and shall be protected in the exercise of the right of self-organization, to form, join, or assist any labor organization, to bargain collectively through representatives of their own choosing on questions of wages, hours, fringe benefits, and other conditions of employment, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection free from interference, restraint, or coercion." Section 39-31-201, MCA.

Likewise, section 9 of the NLRA, 29 USC §159, the section the NLRB found gives rise to the duty of fair representation, is very similar to our own section 39-31-205, MCA, when augmented with subsection 39-31-208(5), MCA.

Section 9(a), of the NLRA , 29 USC §159, provides:

"Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: . . ."

Sections 39-31-205 and 39-31-208(5), MCA:

"39-31-205. Labor organizations designated in accordance with the provisions of this chapter are responsible for representing the interest of all employees in the exclusive bargaining unit without discrimination for the purposes of collective bargaining with respect to rates of pay, hours, fringe benefits, and other conditions of employment."

"39-31-208(5). A labor organization which receives the majority of the votes cast in an election shall be certified by the board as the exclusive representative."

The first time that the NLRB found that a breach of the duty of fair representation was an unfair labor practice was in Miranda Fuel Co. (1962), 140 NLRB 181, 51 LRRM 1584. In Miranda, the NLRB reasoned that the privilege to act as an exclusive bargaining representative granted in section 9

of the NLRA necessarily gave rise to a corresponding section 7 right in union constituents to fair representation by the exclusive representative. The NLRB concluded that a union which acted on the basis of "irrelevant, invidious or unfair" considerations or classifications violated section 8(b)(1)(A) of the NLRA which makes it an unfair labor practice to "restrain or coerce . . . employees in the exercise of the rights guaranteed in section 7."

The NLRB continues to hold that breach of the duty of fair representation is an unfair labor practice, and more specifically, that the processing of a grievance in an arbitrary manner is a violation of section 8(b)(1)(A). See, UAW, Local 600 (Dearborn Stamping Plant of Ford Motor Co.) (1976), 225 NLRB 1299, 93 LRRM 1233; and Laborers Local 324 (Centex Homes of California) (1978), 234 NLRB 367, 97 LRRM 1265. The Federal Courts of Appeals have enforced the holding that a breach of the duty of fair representation is an unfair labor practice many times. NLRB v. Teamsters Local 315 (9th Cir. 1976), 545 F.2d 1173, 93 LRRM 2747; NLRB v. American Postal Workers Union (8th Cir. 1980), 618 F.2d 1249, 103 LRRM 3045; Newport News Shipbuilding & Dry Dock Co. v. NLRB (4th Cir. 1980), 631 F.2d 263, 104 LRRM 2633.

In its first hearing of this case, the BPA recognized the similarities between the NLRA and the Montana Act. Applying a rationale similar to that used by the NLRB and the federal courts, the BPA found that the action by the union here was an unfair labor practice within the meaning of section 39-31-402, MCA. On reconsideration of this case in light of Ford, the BPA decided that its assumption of jurisdiction in this case did not conflict with the actual

-8-

law set down in Ford, although it did conflict with dicta in Ford which stated that a breach of the duty of fair representation was not an unfair labor practice. We agree with the BPA in this matter. We still recognize the holding in Ford that a District Court has original jurisdiction to hear claims that a union has breached its duty of fair representation. We no longer recognize, however, the dicta in Ford which states that a breach of the duty of fair representation is not an unfair labor practice within the meaning of section 39-31-402, MCA. Further, we no longer recognize other dicta in Ford which states that finding jurisdiction in the BPA on these matters would necessarily deprive the District Court of jurisdiction. We see no reason why jurisdiction in the District Court should deprive a grievant of his or her administrative remedies under the Act. Vaca itself stood for the proposition of concurrent jurisdiction in both the NLRB and the federal courts.

We therefore hold that the BPA has jurisdiction to hear claims that a union has breached its duty of fair representation. We remand this case to the District Court for review of the BPA's order.

_____
                Justice

We concur:

_____

_____

_____

_____
Justices

-9-