DEMINGS v CITY OF ECORSE

Docket No. 60492. Submitted August 18, 1982, at Detroit.—Decided August 1, 1983. Leave to appeal applied for.

Plaintiff, Alvin Demings, was promoted from the rank of patrolman to the rank of detective by defendant City of Ecorse Police and Fire Commission. Thereafter, Corporal Frank Chirillo, a fellow police officer, sought the assistance of defendant Police Officers Association of Michigan (POAM) in filing a grievance concerning plaintiff's promotion. POAM was the exclusive collective-bargaining agent for both plaintiff and Corporal Chirillo. POAM pursued the grievance to arbitration contending that plaintiff's promotion had violated the collective-bargaining agreement because of defendant City of Ecorse's failure to post and fill the job opening according to the provisions of the agreement. The city contended that the position was not covered by the provisions of the agreement. An arbitration hearing was conducted, however, plaintiff and his attorney were excluded at POAM's request. Thereafter, the arbitrator ruled in favor of Corporal Chirillo, specifically noting that POAM had not asked that plaintiff be removed from his position, but only that a detective position be posted and filled according to the terms of the collective-bargaining agreement. The arbitrator also ruled that the city violated the collective-bargaining agreement by promoting plaintiff. The city then rescinded plaintiff's promotion and resolved to keep the position to which he had been promoted vacant. Plaintiff thereafter filed an action in the Wayne Circuit Court seeking a preliminary injunction restoring him to the detective position, monetary damages and other relief. Named as defendants were the city, the police and fire commission and POAM. Plaintiff claimed that the city violated the collective-bargaining agreement by demoting him and that

REFERENCES FOR POINTS IN HEADNOTES
[1] 48 Am Jur 2d, Labor and Labor Relations § 115.
[2, 3, 5] 48 Am Jur 2d, Labor and Labor Relations §§ 403, 1153.
   48A Am Jur 2d, Labor and Labor Relations § 1936.
[4] 48 Am Jur 2d, Labor and Labor Relations § 398
[6] 48 Am Jur 2d, Labor and Labor Relations § 1030.
[7] 61A Am Jur 2d, Pleading § 231.

the city and POAM discriminated against him on the basis of race. In addition, plaintiff alleged that POAM breached its duty of fair representation in several respects. The trial court, Robert J. Colombo, J., ruled at a hearing on the request for the preliminary injunction that POAM breached its duty of fair representation by refusing to allow plaintiff to participate in the arbitration of Corporal Chirillo's grievance. The court thereafter entered an order setting aside the arbitrator's award, directing that a new arbitration proceeding be conducted with plaintiff's participation and restoring plaintiff to the position of detective retroactive to the date of his demotion. Later, the court stayed that part of the order directing that a new arbitration hearing be conducted and entered the provisions of the preliminary injunction as a final order. The court also denied POAM's motions for summary and accelerated judgment. POAM appeals from the orders to that effect. *Held:*

1. The duty to fairly represent its members in the grievance procedure must be implied from the union's exclusive control over the procedure. The duty to fairly represent exists in regard to a public employee's union, thus, a cause of action exists under state law where the duty is breached.

2. Plaintiff's claim of POAM's bad faith precludes his employer from barring his claim by relying on plaintiff's failure to pursue the exclusive grievance procedures provided under the contract. Plaintiff's cause of action is the same as that of an employee in the private sector.

3. The Michigan Employment Relations Commission's jurisdiction over fair representation claims is not exclusive where breach of a collective-bargaining agreement is pled against the employer. Therefore, plaintiff's failure to file an unfair labor practice charge with the commission does not bar him from seeking judicial relief.

4. Independent of anything in Michigan's public employment relations act, the right to fair representation exists whenever public employees are represented by an exclusive bargaining agent. The rights enforced in an unfair representation suit are common-law rights; a statutory remedy for a common-law right is cumulative, not exclusive.

5. Public policy considerations do not require a finding either that the Michigan Employment Relations Commission has exclusive jurisdiction over public employees' unfair representation claims or that the exhaustion of the commission's remedies is required before bringing suit in a circuit court.

6. Plaintiff is not bound by the arbitrator's decision requiring

his demotion since he proved his union's bad faith in the grievance-arbitration procedure.

7. The trial court did not abuse its discretion in refusing to grant POAM's motion for a summary judgment.

Affirmed.

1. ACTIONS — LABOR RELATIONS — CONTRACTS — FAIR REPRESENTA-
   TION.

   A cause of action exists in Michigan for a union's breach of its duty of fair representation; such cause of action applies to both public employees and those in the private sector and arises as a result of the union's statutorily granted power of exclusive representation (29 USC 159; MCL 423.211; MSA 17.455[11]).

2. LABOR RELATIONS — ACTIONS — DEFENSES — EXHAUSTION OF
   REMEDIES.

   An employee is not barred from pursuing a claim that his employer breached its contract with him as a result of his failure to pursue the exclusive grievance procedures provided under the contract where he claims bad faith representation by his union in regard to his claim; the cause of action is the same for public employees and those in the private sector.

3. LABOR RELATIONS — EMPLOYMENT RELATIONS COMMISSION — JURIS-
   DICTION — UNFAIR LABOR PRACTICES — FAIR REPRESENTATION
   — PUBLIC EMPLOYEES.

   The Michigan Employment Relations Commission has jurisdiction over a public employee's fair representation claim; the commission has exclusive jurisdiction over unfair labor practices, however, the commission's jurisdiction over unfair representation claims by public employees is not exclusive (MCL 423.210; MSA 17.455[10]).

4. LABOR RELATIONS — FAIR REPRESENTATION — COMMON-LAW
   RIGHTS — STATUTORY REMEDIES.

   The rights enforced in a fair representation suit are common-law rights; a statutory remedy for a common-law right is cumulative, not exclusive.

5. LABOR RELATIONS — ACTIONS — DEFENSES — EXHAUSTION OF
   REMEDIES — FAIR REPRESENTATION.

   A public employee need not exhaust all of the remedies available through the Michigan Employment Relations Commission prior to bringing a suit in circuit court regarding an unfair representation claim.

6. LABOR RELATIONS — ARBITRATION — BAD FAITH.

> An employee who proves his union's bad faith in a grievance-arbitration procedure is not bound by the arbitrator's decision.

7. JUDGMENTS — SUMMARY JUDGMENT.

> A motion for summary judgment for failure to state a claim upon which relief can be granted is considered on the pleadings alone with every well-pleaded allegation accepted as true; the motion should be granted only where the plaintiff's claims are so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery (GCR 1963, 117.2[1]).

*Hurwitz & Karp, P.C.* (by *Martin Hirschman*), for plaintiff.

*Hiller, Larky & Hoekenga* (by *Daniel J. Hoekenga* and *Steven J. Amberg*), for Police Officers Association of Michigan.

Before: BRONSON, P.J., and MACKENZIE and K. N. SANBORN,* JJ.

BRONSON, P.J. The Police Officers Association of Michigan (POAM) appeals from a decision finding that it acted in bad faith and an order vacating an arbitration award, restoring plaintiff to his previous position and directing the parties to conduct an arbitration hearing in which plaintiff is allowed to participate.

On May 5, 1980, the Ecorse Police and Fire Commission promoted plaintiff, then a patrolman, to the rank of detective. On May 7, 1980, Corporal Frank Chirillo sought the assistance of POAM in filing a grievance concerning plaintiff's promotion. POAM was the exclusive collective-bargaining agent for both plaintiff and Corporal Chirillo. Its

---

* Circuit judge, sitting on the Court of Appeals by assignment.

collective-bargaining agreement with the city provided the following grievance procedure:

"7.1: Whenever a police officer has a complaint or grievance, he shall take it up first with the Union.
"Step 1:
"7.2: The Union may file the grievance with the Chief of Police to attempt to settle the dispute. The Chief shall answer the grievance within ten (10) days.
"Step 2:
"7.3: If the answer is unsatisfactory to the Union, the Union may appeal the dispute to the Police and Fire Commission to be heard at the next regular meeting. The Police and Fire Commission shall answer the grievance within thirty-five (35) days from when it is filed.
"Step 3:
"7.4: In the event the Union is not satisfied with the disposition of the dispute, the Union may file the dispute with the American Arbitration Association or the Michigan Employment Relations Commission (MERC) for final and binding arbitration in accordance with their rules.
"7.5: The City and Union shall share the cost of arbitration."

POAM pursued Corporal Chirillo's grievance to arbitration. It contended that plaintiff's promotion had violated the collective-bargaining agreement due to the city's failure to post and fill the job opening according to the provisions of the agreement. The city contended that the position filled by plaintiff was not covered by the vacancy or job assignment provisions of the agreement.

On February 12, 1981, an arbitration hearing was held. Plaintiff attempted to appear at the hearing with his attorney. POAM's representative asked that plaintiff be excluded from the hearing unless the city wished to call him as a witness. The arbitrator granted POAM's request. At the

conclusion of the hearing, POAM, the city and the arbitrator agreed that plaintiff should be requested to submit his arguments in writing to the arbitrator. On February 17, 1981, plaintiff's attorney submitted a letter to the arbitrator. He reiterated plaintiff's position, stated before the hearing, that the arbitrator was without jurisdiction to make an award directly affecting plaintiff. He argued that, even if the arbitrator had possessed jurisdiction to decide plaintiff's claim to stay in his job, plaintiff's right to due process had required his participation in the arbitration hearing. He also argued that a favorable disposition of Corporal Chirillo's grievance did not require plaintiff's demotion.

On March 13, 1981, the arbitrator ruled in favor of Corporal Chirillo. He specifically noted that POAM had not asked that plaintiff be removed from his position, but only that a detective position be posted and filled according to the terms of the collective-bargaining agreement. The city had contended that the arbitrator was without power to affect plaintiff's position. He ruled that the city violated the collective-bargaining agreement by promoting plaintiff. His award stated:

"3. The Employer shall reconsider the promotion of Officer Demings by offering the Detective position filled by Demings to the most senior qualified member of the bargaining unit, if other than Demings. In so doing the Employer shall first offer the position to the members of the bargaining unit and then fill the position with the most senior qualified employee in the bargaining unit seeking the position."

On June 1, 1981, the city rescinded plaintiff's promotion and resolved to keep the position to which he had been promoted vacant.

On June 26, 1981, plaintiff filed an action in

circuit court seeking a preliminary injunction restoring him to his previous position, monetary damages and other relief. Named as defendants were the city, its police and fire commission and POAM. Plaintiff's claims can be characterized as follows:

1. The city violated the collective-bargaining agreement by demoting him;

2. POAM arbitrarily refused to file a grievance on his behalf concerning the alleged violation;

3. Certain of the allegations made in Corporal Chirillo's grievance were equally applicable to other promotions, yet no grievances were filed in those cases;

4. His demotion resulted from his wrongful exclusion from the February 12, 1981, arbitration hearing;

5. The city and POAM discriminated against him on the basis of race.

Claims 2, 3, and 4 were alleged to be breaches of POAM's duty of fair representation.

At a hearing on plaintiff's request for a preliminary injunction, plaintiff asked the court to make a preliminary decision based only on the question of the union's duty of fair representation. The trial court ruled that POAM breached its duty to represent plaintiff fairly by refusing to allow him to participate in the arbitration of Corporal Chirillo's grievance. The court entered an order setting aside the arbitrator's award, directing that a new arbitration proceeding be conducted with plaintiff's participation and restoring plaintiff to the position of detective retroactive to the date of his demotion. Later, the court stayed that part of the order directing that a new arbitration hearing be conducted and entered the provisions of the preliminary injunction as a final order. At that time, it

denied defendant POAM's motions for summary and accelerated judgment. POAM has appealed; the city has not.

POAM claims that Michigan should not recognize, as a cause of action, a claim that a public employee union breached its duty of fair representation. Such a cause of action may be asserted in federal and state courts for private sector employees covered by the provisions of the federal Labor Management Relations Act (LMRA) under § 301 of that act, 29 USC 185. *Vaca v Sipes,* 386 US 171; 87 S Ct 903; 17 L Ed 2d 842 (1967). Plaintiff, an employee of a political subdivision of a state, is not covered by the federal labor laws. LMRA, § 2(2), 29 USC 152(2). Plaintiff, the city and POAM are subject to Michigan's analogous public employment relations act (PERA), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.*

POAM argues that the absence, in PERA, of a provision analogous to § 301 of the LMRA indicates that no cause of action for breach of the duty of fair representation exists for the state's public employees. The inclusion of the jurisdictional grant in § 301 confirmed the congressional intent that other provisions of the LMRA for redressing unfair labor practices did not constitute an exclusive statement of the rights created by that act and did not eliminate or militate against the right to seek relief in federal courts for violations of a collective-bargaining agreement. *Wilson & Co v United Packinghouse Workers of America,* 83 F Supp 162 (SD NY, 1949). Section 301 was intended to eliminate obstacles to bringing a claim of a breach of a collective-bargaining agreement in federal court, *International Longshoremen's & Warehousemen's Union v Juneau Spruce Corp,* 342 US 237; 72 S Ct 235; 96 L Ed 275 (1952). The

jurisdictional grant does not give federal courts any different or additional powers than a state court would have had if the action had been brought there. *Mercury Oil Refining Co v Oil Workers International Union, CIO,* 187 F2d 980 (CA 10, 1951).

The Michigan Supreme Court has recognized that a right of action exists for breach of the duty of fair representation. *Lowe v Hotel & Restaurant Employees Union, Local 705,* 389 Mich 123, 145; 205 NW2d 167 (1973). Our Supreme Court stated that the duty arose out of the statutory power of exclusive representation granted unions in § 9 of the National Labor Relations Act (NLRA), 29 USC 159. *Bebensee v Ross Pierce Electric, Inc,* 400 Mich 233, 244; 253 NW2d 633 (1977). The Court held that a union's power to bargain exclusively for the employees of a bargaining unit, and to make binding agreements governing the individual member's employment, implicitly imposed on the union the duty of fairly representing all members of the unit. *Bebensee, supra,* pp 244-245. See also *Humphrey v Moore,* 375 US 335; 84 S Ct 363; 11 L Ed 2d 370 (1964); *Ford Motor Co v Huffman,* 345 US 330; 73 S Ct 681; 97 L Ed 1048 (1953).

In Michigan, a public employee's union is granted the same power of exclusive representation by § 11 of PERA, MCL 423.211; MSA 17.455(11), as is granted unions in the private sector by § 9 of the NLRA. As in the private sector, the power of exclusive representation implies the duty to represent fairly. See *Saginario v Attorney General,* 87 NJ 480; 435 A2d 1134 (1981) (Clifford, J., *concurring).* The statutory grant of the power of exclusive representation might infringe on the due process rights of a member of a bargaining unit absent the implication of a duty to

represent fairly. *Local Union No 12, United Rubber, Cork, Linoleum & Plastic Workers of America, AFL-CIO v National Labor Relations Board,* 368 F2d 12 (CA 5, 1966), *cert den* 389 US 837; 88 S Ct 53; 19 L Ed 2d 99 (1967). We think that, for public employees, the existence of the right to fair representation must be implied from the grant to unions of exclusive bargaining rights. In the present case, the duty to fairly represent its members in the grievance procedure must be implied from the union's exclusive control over the procedure. Having concluded that the duty of the public employee's union exists, we have no doubt that a cause of action exists under state law where the duty is breached. Plaintiff is claiming that the city breached its contract with him; his claim of the union's bad faith precludes the employer from barring his claim by relying on plaintiff's failure to pursue the exclusive grievance procedures provided under the contract. Plaintiff's cause of action is the same as that of an employee in the private sector.

POAM claims that plaintiff's suit was barred by his failure to exhaust administrative remedies, specifically his failure to bring an unfair labor practice charge with the Michigan Employment Relations Commission (MERC). We agree that MERC has jurisdiction over public employees' fair representation claims. MCL 423.210; MSA 17.455(10) makes it unlawful for a labor organization to restrain or coerce a public employee in the exercise of his right to organize and engage in concerted activity. Under federal law, the breach of a union's duty of fair representation is an unfair labor practice because it may result in employees' unwillingness to participate in their union, thus restraining their right to engage in

protected concerted activity. *Local Union No 12, supra.* Montana's Supreme Court has interpreted provisions in its public employment relations statute, identical to ones appearing in PERA, as conferring jurisdiction over fair representation claims on the body which considers unfair labor practice claims. *Teamsters, Local No 45 v State ex rel Board of Personnel Appeals,* 635 P2d 1310 (Mont, 1981). The unfair labor practice provisions of both PERA and the Montana statute are patterned closely after those of the NLRA. Interpretations of the NLRA and state labor laws patterned after it are often persuasive in the interpretation of PERA. We hold that MERC has jurisdiction over fair representation claims.

POAM claims that plaintiff's failure to file an unfair labor practice charge with MERC was a failure to exhaust administrative remedies barring him from seeking judicial relief. We cannot agree.

Our Supreme Court has held that MERC's jurisdiction and authority to determine unfair labor practices under PERA is exclusive. *Lamphere Schools v Lamphere Federation of Teachers,* 400 Mich 104, 118; 252 NW2d 818 (1977). We cannot decide the exhaustion claim without considering the possibility of exclusive jurisdiction. This Court has decided a public employee's fair representation suit without considering this question. *Martin v Shiawassee County Bd of Comm'rs,* 109 Mich App 32; 310 NW2d 896 (1981). Faced with a very similar statute, the Montana Supreme Court decided that its courts had concurrent jurisdiction over fair representation claims. *Teamsters, Local No 45, supra.* See also *Ford v University of Montana,* 598 P2d 604 (Mont, 1979). In the private sector, the NLRB does not have exclusive jurisdiction over fair representation claims and the federal and

state courts have not required exhaustion of administrative remedies. *Thomas v Ford Motor Co,* 396 F Supp 52 (ED Mich, 1973), *aff'd* 516 F2d 902 (CA 6, 1975), *cert den* 421 US 988; 95 S Ct 1991; 44 L Ed 2d 478 (1975); *Crawford v Pittsburgh-Des Moines Steel Co,* 386 F Supp 290 (D Wyo, 1974). At least one federal court has held that the NLRB does have exclusive jurisdiction over fair representation claims where the claim against the union is not coupled with a claim that the employer breached the collective-bargaining agreement. *Local Union No 12, supra.*

Despite the broad language of *Lamphere, supra,* acknowledging MERC's exclusive jurisdiction over unfair labor practices, we do not believe that MERC's jurisdiction over fair representation claims is exclusive. The *Lamphere* Court cited three reasons for its holding that a school district may not sue a teachers' union for damages caused by a peaceful strike made illegal by PERA. The first was the conviction, upon a review of the language and history of PERA, that PERA was to occupy the public labor relations field completely in dealing with public employees' peaceful strikes. Second was the absence of any common-law precedent for the cause of action pled by the school district. Third was the public policy against recognizing a new cause of action which might unsettle a precarious balance of power in public sector union-management relations. *Lamphere, supra,* pp 107-108. These reasons do not militate in favor of holding that MERC has exclusive jurisdiction over fair representation claims where breach of a collective-bargaining agreement is pled against the employer.

In *Lamphere,* the Court examined PERA and found that the careful wording of the act's exten-

sive anti-strike provisions indicated a legislative intent to exclude resort to all other remedies to settle disputes arising out of a public employees' strike. The Legislature did not discuss fair representation claims at all in PERA. Jurisdiction to hear fair representation claims must be implied from the very general provisions of MCL 423.210; MSA 17.455(10). Furthermore, the main provisions of PERA were enacted in 1947, long before fair representation claims were recognized as unfair labor practice claims by the NLRB in *Miranda Fuel Co,* 140 NLRB 181; 51 LRRM 1584 (1962), *enforcement den* 326 F2d 172 (CA 2, 1963). *Vaca v Sipes,* 386 US 171, 177-179; 87 S Ct 903; 17 L Ed 2d 842 (1967). It is unlikely that our Legislature actually contemplated the treatment of a breach of the duty of fair representation as an unfair labor practice. We cannot say that anything in the language or history of PERA suggests an intent to treat fair representation claims like illegal strike claims.

In *Lamphere,* the Supreme Court found no applicable precedent for the cause of action pled by the school district, *i.e.,* for damages to an employer caused by a strike made illegal by PERA. Conceding that the jurisdictional question is not resolved by our conclusion, we find no difference between plaintiff's claimed cause of action and one pled by a private employee. In bringing a fair representation suit, an employee is only marginally interested in enforcing his rights under PERA. He is primarily interested in enforcing his contract rights under the collective-bargaining agreement against the employer and his right to an agent's good faith dealing against the union. It is the contractual nature of a fair representation cause of action that convinced the United States Su-

preme Court that neither exclusive NLRB jurisdiction nor the exhaustion doctrine applied to keep such cases out of the courts. *Vaca, supra,* pp 183-187. The rights enforced by a fair representation suit are not just rights granted by PERA; they are rights arising from the law of contract. While PERA allowed public employers and employees to enter into relationships which gave rise to the right of fair representation, it was the fiduciary or agency relationship and not the statute which gave rise to the duty. Independent of anything in PERA, the right to fair representation exists whenever public employees are represented by an exclusive bargaining agent. We conclude that the rights enforced in a fair representation suit are common-law rights; a statutory remedy for a common-law right is cumulative, not exclusive. *Lamphere, supra,* p 127.

The third factor supporting the finding of exclusive jurisdiction in *Lamphere* was the Court's assessment of public policy considerations. An assessment of the same considerations here leads us to conclude that neither exclusive MERC jurisdiction nor the doctrine of exhaustion required dismissal of plaintiff's suit. Our courts commonly hear fair representation suits which arise in the private sector. In such cases, state courts apply the uniform federal common law. In most cases, the same principles will apply to public employees' fair representation suits. In *Lamphere,* the provisions of PERA provided a comprehensive framework for the resolution of the dispute between the parties. The procedures of PERA are not designed to resolve fully all fair representation claims. It is clear from *Lowe* that the union may be held liable in damages for breach of the duty of fair representation, a remedy not available from MERC. In

many fair representation cases, an arbitration decision may be involved which gives rise to cross-claims seeking confirmation or vacation of the award. Jurisdiction to decide fully many fair representation disputes may only be found in the circuit courts. Moreover, MERC's resources may be allocated in such a way that fair representation claims are not accorded the same attention or priority that claims affecting a bargaining unit at large are. Such an allocation would make sense given MERC's major purposes under PERA. We hold that MERC does not have exclusive jurisdiction over public employees' fair representation claims.

For many of the reasons we have stated in discussing the public policy aspects of exclusive MERC jurisdiction, we conclude that exhaustion of MERC remedies is not required before bringing suit. The fair representation suit involves common-law rights not guaranteed by PERA. These rights are usually enforced by courts, not by administrative agencies. There is no reason to believe that MERC's expertise in handling fair representation claims exceeds that of the courts. Most importantly, full resolution of fair representation claims may not be available in MERC.

We reject POAM's claim that plaintiff is bound by the arbitrator's decision requiring his demotion. A plaintiff who proves his union's bad faith in a grievance-arbitration procedure may avoid the bar imposed by the arbitrator's decision affecting him.

We next turn to POAM's claim that its motion for summary judgment for failure to state a claim should have been granted.

A motion for summary judgment based on GCR 1963, 117.2(1) challenges the legal sufficiency of the plaintiff's claim and is to be considered by an

examination of the pleadings alone. Every well-pleaded allegation must be accepted as true. The test is whether plaintiff's claims are so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. *McMath v Ford Motor Co,* 77 Mich App 721; 259 NW2d 140 (1977).

It is true that conclusory statements of unfair representation, standing alone, may fail to state a claim upon which relief may be granted. See *Carry v Consumers Power Co,* 64 Mich App 292, 298; 235 NW2d 765 (1975). However, plaintiff's allegations herein appear to be as reasonably specific and factual as they can be in the circumstances. Plaintiff alleges, *inter alia,* that: (1) POAM arbitrarily refused to file a grievance on plaintiff's behalf; (2) plaintiff's demotion resulted from POAM's grievance on behalf of another worker and its manner of pursuing the grievance; (3) plaintiff was excluded from the arbitration hearing at POAM's request, although he appeared with his attorney; (4) POAM failed to challenge other promotions equally challengeable; and (5) POAM's acts reflect disparate treatment based in part on his race.

We hold the trial court did not abuse its discretion by refusing to grant POAM summary judgment. Taking every well-pled allegation as true, factual development can possibly justify a right to recovery on an unfair representation claim.

Affirmed. Costs to appellee.