No. 86-42

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

MISSOULA COUNTY HIGH SCHOOL
DISTRICT,

               Petitioner and Respondent,

    -vs-

BOARD OF PERSONNEL APPEALS OF
THE STATE OF MONTANA, and
MISSOULA COUNTY HIGH SCHOOL
EDUCATION ASSOCIATION, MEA,

         Respondents and Appellants.

---

APPEAL FROM:  District Court of the Fourth Judicial District,
              In and for the County of Missoula,
              The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hilley & Loring; Emilie Loring, Great Falls, Montana
        Mary Anne Simpson, Bd. of Personnel Appeals, Helena,
        Montana

    For Respondent:

        Worden, Thane & Haines; Molly Shepherd, Missoula,
        Montana

---

Submitted on Briefs: May 30, 1986

Decided:  November 13, 1986

Filed: NOV 13 1986

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The Montana Board of Personnel Appeals (the BPA) and the Missoula County High School Education Association (MCHSEA) appeal a Missoula County District Court order which ruled that the Missoula County High School District (the School District) did not commit an unfair labor practice in violation of § 39-31-401, MCA. The District Court order reversed a BPA decision that the School District violated § 39-31-401, MCA, by paying certain non-striking teachers for eighteen days of work where those teachers had agreed to work eighteen days but actually worked only one day. The issues on appeal are whether the District Court erred by reversing; (1) the BPA's conclusion of law that the School District's conduct was not justified by a legitimate, substantial, business necessity; (2) the BPA's conclusion of law that the School District's action was inherently destructive of protected labor rights; and (3) the BPA's finding of fact that the non-striking teachers were not available and on-call after June 4, 1981. We affirm.

MCHSEA is the recognized exclusive bargaining representative of the School District's non-supervisory certificated or licensed employees. On May 11, 1981, MCHSEA went on strike against the School District. The School District did not attempt to operate the Missoula schools during the first week of the strike. On June 1, 1981, the School District superintendent sent a letter to all members of the bargaining unit. In pertinent part, that letter stated:

> The school district has just received definite legal advice that our schools must be open for 180 days in the 1980-81 school year or we will lose $1.275 million in state aid.
>
> . . . A $1.275 million cut would necessarily mean much larger class sizes, reduced curricular and extra-curricular offerings.
>
> Schools must open June 4, 1981 if this community is to maintain the quality of our school program for next year . . .
>
> High schools will open on June 5th for freshman, sophomore and junior classes . . . All high school teachers should notify their principal by 4:00 p.m. June 3, 1981 indicating a willingness to work commencing with a PIR day at 8:00 a.m. June 4, 1981 . . .
>
> Teachers returning June 4th to completion of the school year shall receive for the 1980-81 school year an average 10.6% increase as per the attached salary schedule which includes increments and horizontal changes. This payment will be retroactive to August 27, 1980. All fringe benefits including insurance for June will be paid.

Twenty teachers notified the School District's administration that they would return to work if the School District attempted to operate. The School District opened the Missoula schools on June 4, 1981. Three teachers who had agreed to return did not do so because of either illness or family emergency. After the first day and with what is described as good and sufficient reasons, the School District's Board of Trustees determined it would be inappropriate to continue the operation of the schools. The School District made no further attempt to operate the schools for the balance of the 1980-81 school year.

In April 1982, a Missoula attorney, representing one of the teachers who returned to work, sent a letter to the

Missoula County High School Board of Trustees. The letter stated that the School District superintendent's June 1 letter was an offer of employment for a specific term; that the School District did not reserve the right to terminate the offer or any agreement arising therefrom; that, in the attorney's opinion, a contractual relationship existed between the School District and the teacher for employment for a specific number of days commencing on June 4, 1981, and ending on the 180th day of the 1980-81 school year; and that the School District breached the agreement by refusing to pay the teacher for work he was prepared to perform. In July 1982, the attorney sent another letter to the School District on behalf of the same teacher. That letter again explained the basis of the teacher's claim and stated that the teacher was seriously contemplating legal action.

In September 1982, upon the advice of its attorney, the School District paid the twenty returning teachers for the remaining eighteen days they had agreed to teach. The School District did not pay any of the striking teachers for this period.

In October 1982, the MCHSEA filed an unfair labor practice charge with the BPA alleging that the School District had discriminated against those teachers who had supported the strike. The union sought: (1) reimbursement of all amounts deducted from the striking teachers' salaries because of their participation in the strike, and (2) corresponding contributions to the teachers' retirement system. In June 1983, counsel for MCHSEA and counsel for the School District agreed to a stipulation of facts which was submitted to the BPA. In December 1983, a hearing officer

4

from the BPA issued his findings of fact, conclusion of law and order ruling that the School District had committed unfair labor practices violating § 39-31-401(1) and (3), MCA.

Specifically, the hearing officer ruled that the School District's conduct was inherently destructive of the public employees' self-organizational rights; that there was no substantial and legitimate business justification for the School District's actions; and that the non-striking teachers were not on-call during the seventeen days in question. The School District filed exceptions to the hearing officer's decision with the BPA. The full BPA held an oral argument on this case in March 1984. In June 1984, the BPA issued its final order adopting the hearing examiner's findings of fact and conclusions of law. The BPA ordered the School District to stop violating § 39-31-401(1) and (3), MCA, and fashioned two alternative remedies to compensate the striking teachers.

In July 1984, the School District filed a petition for judicial review and for declaratory judgment with the Missoula County District Court. The BPA and the MCHSEA filed answers and the District Court, sitting without a jury, heard oral arguments in June 1985. In November 1985, the court entered its findings of fact, conclusions of law and order. The court made the following conclusions of law: in view of the evidence, the BPA clearly erred in finding that the teachers did not make themselves available and did not remain on-call after June 4, 1981; the BPA abused its discretion and committed an error of law by concluding that the School District was under no obligation to pay the teachers for more than one day of work; the BPA abused its discretion and committed an error of law in concluding that the payment to

5

the teachers was inherently destructive of protected rights and, therefore, no proof of anti-union motivation was required; and that the BPA abused its discretion and committed an error of law by concluding that the School District's conduct was clearly prohibited under § 39-31-401, MCA. This appeal followed.

Section 39-31-401, MCA, provides in part:

> It is an unfair labor practice for a public employer to:
>
> (1) interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in 39-31-201;
>
> . . .
>
> (3) discriminate in regard to hire or tenure of employment or any term or condition of employment in order to encourage or discourage membership in any labor organization; however, nothing in this chapter or in any other statute of this state precludes a public employer from making an agreement with an exclusive representative to require, as a condition of employment, that an employee who is not or does not become a union member, must have an amount equal to the union initiation fee and monthly dues deducted from his wages in the same manner as checkoff of union dues; . . .

Section 39-31-201, MCA, provides:

> Public employees shall have and shall be protected in the exercise of the right of self-organization, to form, join, or assist any labor organization, to bargain collectively through representatives of their own choosing on questions of wages, hours, fringe benefits, and other conditions of employment, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection free from interference, restraint, or coercion.

These statutes are virtually identical to parts of the federal National Labor Relations Act (NLRA), 29 U.S.C. § 157 and § 158. This Court and the BPA both look to National

Labor Relations Board and federal court interpretations of the NLRA for guidance in interpreting the equivalent Montana statutes. Teamsters, Etc. v. St. Ex Rel. Bd. of Personnel (1981), 195 Mont. 272, 635 P.2d 1310; State v. Dist. Court of Eleventh Jud. Dist. (1979), 183 Mont. 223, 598 P.2d 1117.

Where, as here, a district court reviews an agency decision, the standard of review is set forth in the Montana Administrative Procedure Act at § 2-4-704, MCA. The relevant portions of that statute state:

> (2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (a) in violation of constitutional or statutory provisions;
>
> (b) in excess of the statutory authority of the agency;
>
> (c) made upon unlawful procedure;
>
> (d) affected by other error of law;
>
> (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
>
> (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (g) because findings of fact, upon issues essential to the decision, were not made although requested.

Addressing the statute, this Court has stated:

> [F]indings of fact by an agency have been subject to a "clearly erroneous" standard of review by the courts . . . Conclusions of law are subject to an

7

> "abuse of discretion" review. These
> standards differ due to the agency's
> expertise regarding the facts involved
> and the court's expertise in interpreting
> and applying the law. (Citations
> omitted.)

City of Billings v. Billings Firefighters (1982), 200 Mont.
421, 430, 651 P.2d 627, 632.

The BPA held that the School District had violated
subsections (1) and (3) of § 39-31-401, MCA. Under the
equivalent federal statutes (29 U.S.C. § 158(a)(1) and
(3)),any violation of subsection (3) necessarily includes a
derivative violation of subsection (1). N.L.R.B. v. Swedish
Hospital Med. Center (9th Cir. 1980), 619 F.2d 33, 35.
Subsection (1) "was intended as a general definition of
employer unfair labor practices. Violations of it may be
either derivative, independent, or both." Fun Striders, Inc.
v. N.L.R.B. (9th Cir. 1981), 686 F.2d 659, 661. In this
case, the BPA did not specify whether the subsection (1)
violation was derivative from the subsection (3) violation or
whether it was an independent violation. However, language
in the hearing examiner's opinion indicates that he
considered there to be an independent violation of
§ 39-31-401(1), MCA. Thus, we proceed as if the BPA had
found an independent violation of subsection (1).

Section 39-31-401(3), MCA, makes it an unfair labor
practice for a public employer to "discriminate in regard to
hire or tenure of employment or any term or condition of
employment in order to encourage or discourage membership in
any labor organization . . . " Addressing the federal
counterpart to this section, the United States Supreme Court
stated:

8

> [T]he intention was to forbid only those acts that are motivated by an anti-union animus . . . But an employer may take actions in the course of a labor dispute that present a complex of motives . . . and it is often difficult to identify the true motive.
>
> In these situations the Court has divided an employer's conduct into two classes . . . Some conduct is so "'inherently destructive of employee interests'" that it carries with it a strong inference of impermissible motive . . . In such a situation, even if an employer comes forward with a nondiscriminatory explanation for its actions, the Board "may nevertheless draw an inference of improper motive from the conduct itself and exercise its duty to strike the proper balance between the asserted business justifications and the invasion of employee rights in light of the Act and its policy." . . . On the other hand, if the adverse effect of the discriminatory conduct on employee rights is "'comparatively slight,' an antiunion motivation must be proved to sustain the charge _if_ the employer has come forward with evidence of legitimate and substantial business justifications for the conduct." (Citations omitted.)

Metropolitan Edison Co. v. NLRB (1983), 460 U.S. 693, 700-701, 103 S.Ct. 1467, 1473, 75 L.Ed.2d 387, 396. In this case, the BPA found that the School District had no substantial, legitimate business justification for making the payments to the teachers and that the payments were inherently destructive of the striking teachers' union interests. Thus, the BPA found a violation of § 39-31-401(3), MCA.

The first issue is whether the District Court erred by reversing the BPA's conclusion of law that the School District had no legitimate business justification for making the payments. We first note that although the BPA and the hearing examiner characterized this conclusion as a finding

9

of fact, it is more properly seen as a conclusion of law. Thus, that conclusion is subject to the "abuse of discretion" standard of review.

The stipulated facts show that the payment was made only after an attorney for one of the teachers threatened legal action. Two letters from that attorney are attached as exhibits to the stipulated facts. The attorney asserted that the superintendent's letter was an offer of employment for a specific number of days; i.e. from June 4th to the completion of the 180th day of the school year. The attorney charged that the teacher was prepared to perform for the term of the contract and that the School District breached the agreement by refusing to pay him for the work he was prepared to perform. At the hearing before the full Board of Personnel Appeals, board members discussed and considered a letter from the School District's superintendent. Although that letter was not part of the stipulated facts, no objection was made to consideration of that letter and it is properly part of the record before this Court. See § 39-31-409(3), MCA. The superintendent's letter shows (1) that an attorney advised the School District that the teacher's claim was valid and (2) that the School District decided not to litigate the claim because of the increased cost to do so. The letter expressed concern that if the School District was unsuccessful in contesting the claim, the court would order the School District to pay the teacher's attorney's fees which would increase the loss by 30-40%. The hearing examiner disagreed with the School District and found that there was no obligation to pay the teachers except for the one day they worked. Thus, the hearing examiner and the BPA

10

concluded there was no business justification for paying the claim. We agree with the District Court that that conclusion was an abuse of discretion.

We need not decide for the purposes of this opinion whether the School District or the BPA correctly determined the legitimacy of the teacher's claim.

> The legitimacy of the [School District's] conduct for purposes of the analysis prescribed by Great Dane depends not on the truth of its assertions regarding its contractual obligations but rather on the reasonableness and bona fides with which it held its beliefs.

> . . .

> The First Circuit's decision in NLRB v. Borden, Inc., Borden Chemical Division, 600 F.2d 313 (1st Cir. 1979), is persuasive in this regard. In Borden, the employer withheld accrued vacation pay because of the employees' strike activity until after the contractual vacation period had expired. The Board rejected the employer's assertion that it was acting pursuant to a contractual obligation, i.e., "employees shall not be paid vacation pay in lieu of vacation," and concluded that the denial of vacation benefits was inherently destructive of the employees' rights. The First Circuit remanded the case, declaring:

> "Borden did come forward with evidence of a business justification for its conduct, namely, the terms of the collective bargaining agreement and past practice.

> The Board found this reason invalid because its interpretation of the contract differed from that of Borden's. This, however, is not a question of contract interpretation. The Board had a duty to determine whether Borden was motivated by its reliance on the collective bargaining agreement or by anti-union animus when it withheld the accrued vacation benefits. We caution the Board that it is neither our function nor the Board's to second-guess business decisions. "The Act was not intended to guarantee that business decisions be sound, only that they not be the product

11

of antiunion motivation" (Emphasis in
original.) (Citations omitted.)

Vesuvius Crucible Co. v. N.L.R.B. (3rd. Cir. 1981), 668 F.2d
162, 167. See also Stokely-Van Camp, Inc. v. N.L.R.B. (7th
Cir. 1983), 722 F.2d 1324.

In Vesuvius, the employer, interpreting a collective
bargaining agreement, refused to pay allegedly accrued
vacation benefits to any employee, striking or nonstriking.
The NLRB found that this interpretation of the collective
bargaining agreement was incorrect, that the employees' right
to the benefits had accrued, and that the employer committed
unfair labor practices in refusing to pay. The Third Circuit
reversed finding the company's interpretation reasonable and
arguably correct. The Vesuvius court found that the NLRB
overstepped its authority in formulating its own
interpretation of the contract.

The instant case is similar to Borden and Vesuvius.
Here, the hearing examiner disagreed with the School
District's interpretation of the contract but he did not
address the reasonableness of that interpretation. We find
that the School District made a reasonable interpretation of
the contract and paid the claim out of a bona fide belief
that the claim was valid. The School District paid the claim
only after the teacher threatened to file suit to collect.
Moreover, the School District's attorney advised the School
District that this was a legal claim which should be paid.
Finally, we find that the School District's interpretation of
the contract was arguably correct. Therefore, we affirm the
District Court's reversal of the BPA's conclusion that the

12

School District had no substantial, legitimate business justification for the payment.

The second issue is whether the lower court properly reversed the BPA's conclusion that the School District's action was inherently destructive of protected labor rights. Inherently destructive conduct, in this context, is conduct which carries with it, ". . . unavoidable consequences which the employer not only foresaw but which he must have intended" and thus bears "its own indicia of intent." (Citation omitted.) N.L.R.B. v. Great Dane Trailers (1967), 388 U.S. 26, 33, 87 S.Ct. 1792, 1797, 18 L.Ed.2d 1027, 1034. The Ninth Circuit Court of Appeals describes those cases finding inherently destructive conduct as:

> [C]ases involving conduct with far reaching effects which would hinder future bargaining, or conduct which discriminates solely upon the basis of participation in strikes or union activity. Examples of inherently destructive activity are permanent discharge for participation in union activities, granting of superseniority to strike breakers, and other actions creating visible and continuing obstacles to the future exercise of employee rights. (Citation omitted.)

Portland Willamette Co. v. N.L.R.B. (9th Cir. 1976), 534 F.2d 1331, 1334. The Portland Willamette Co. court declined to find inherently destructive conduct in an employer's proposal, during a strike, to grant a retroactive pay increase to workers who had returned to, and remained at, work by a certain date.

General Electric Co. (1948), 49 NLRB 510, 23 LRRM 1094, supports a conclusion that there was no inherently destructive conduct in this case. In General Electric the

13

employees engaged in a strike and the employer, upon the strike's termination, paid full wages for the entire strike period to those employees who had indicated a willingness to work during the strike. Although the compensated employees actually did no work during the strike, the NLRB found that those workers were "on call" and available for work. The NLRB found no unlawful disparity of treatment in paying full wages to those workers for the strike period.

In this case, the BPA found that the teachers were not on-call and did not make themselves available for work after the first day. The District Court ruled that this finding was clearly erroneous. The propriety of this ruling is the third issue on appeal. The facts support an inference that the teachers did make themselves available to work the entire period in question. The superintendent's letter soliciting teachers (the offer) clearly contemplated that the teachers would work until the completion of 180 school days, i.e., for eighteen more days. By showing up for work the first day, the teachers accepted the offer and implicitly agreed to work, and make themselves available, for eighteen days.

The BPA found that the School District discriminated against the strikers solely on the basis of union activity. We disagree. The School District discriminated in favor of the non-strikers because they took the affirmative step of agreeing to teach for eighteen days and forego other options for those days. Moreover, the payments were made more than a year after the strike and only after the threat of a lawsuit. The School District's conduct arose out of a unique situation and is not the equivalent of permanently discharging strikers or granting superseniority to non-strikers. The inherently

14

destructive label simply does not fit this conduct. Therefore, we uphold the District Court's reversal of the BPA on this point.

We concede that the School District's conduct may have had a comparatively slight impact on employee rights. Teachers may hesitate slightly in joining future strikes. To find a violation of § 39-31-401(3), MCA, where the discriminatory conduct has comparatively slight effect, "[A]n antiunion motivation must be proved to sustain the charge if [as here] the employer has come forward with evidence of legitimate and substantial business justifications for the conduct." Metropolitan Edison Co., 460 U.S. at 701. The BPA concedes, and the record shows, that there is no evidence that the School District acted with an anti-union motive. Therefore, we hold that there was no violation of § 39-31-401(3), MCA.

Finally, we address the issue of whether there was an independent, as opposed to derivative, violation of § 39-31-401(1), MCA.

> Such a violation is established by showing:
>
> (1) that employees are engaged in protected activities, (citation omitted);
>
> (2) that the employer's conduct tends to "interfere with, restrain, or coerce employees" in those activities, (citation omitted); and
>
> (3) that the employer's conduct is not justified by a legitimate and substantial business reason, (citation omitted).

Fun Striders, Inc., 686 F.2d at 661-662. We held above that the employer's conduct was justified by a legitimate and

15

substantial business reason. Therefore, there can be no independent violation of § 39-31-401(1), MCA.

The District Court properly reversed the BPA order finding unfair labor practices.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

_____
Honorable Henry Loble, Judge
of the District Court sitting
in place of Mr. Justice John
C. Harrison.

16

Mr. Justice William E. Hunt, Sr., dissenting:


I dissent.  I would uphold the BPA decision that the
School District violated § 39-31-401, MCA, by paying the
non-striking teachers for eighteen days of work where those
teachers actually worked only one day.  The facts as set out
by the majority refer to the letter sent to all teachers by
the School District, however the majority opinion does not
set out that letter in full.  There is one key sentence
omitted.  That sentence is the last sentence of the letter
which reads:

"Teachers who do not report for duty by 8:00 a.m. on
June 4, 1981 will be replaced."
This sentence is the crux of that letter, as is shown by the
fact that the School Board refers to this letter in the
minutes of its meetings as the "replacement letter."  The
letter further states, "Teachers returning June 4th to
completion of the school year shall receive . . . an average
10.6% increase . . .."  Twenty teachers told the District's
agents that they would return on June 4.  Seventeen actually
worked June 4th, two of the teachers had a family emergency
and one was sick.  On the evening of June 4 the School
District decided to close Missoula county high schools
through Friday, June 5.  On Sunday, June 7 the Board decided
to close the schools for the remainder of the 1980-81
academic year.

The first issue raised on appeal, is whether
the District Court erred in reversing the BPA's finding
of fact that non-striking teachers were not available
and on-call after June 4, 1981.  The School District
urges that the payment for eighteen days

- 17 -

of work when only one was in fact worked was approved in General Electric Co. (1948), 80 NLRB 510, 23 LRRM 1094. In General Electric, the employer paid employees who made their services available and remained on-call in a standby capacity. The employer refused to pay strikers. The NLRB held that the payment to non-strikers who did not work was not discriminatory because they remained subject to the employer's call on a standby capacity which was compensable as a matter of law. Thus the factual issue of whether the returning teachers were on-call after June 4, 1981 becomes crucial. The BPA held they were not because the schools were closed and the school year was over. I agree that the returning teachers could not have remained on call for seventeen days after the schools had closed for the academic year, thus I would hold that General Electric has no application to this case. The conduct of the School District was to divide the work force into those who decided to go out on strike and those who did not and to reward the latter group.

The United States Supreme Court has set out the test to determine if discriminatory conduct constitutes an unfair labor practice in NLRB v. Great Dane Trailers, Inc. (1967), 388 U.S. 26, 34, 87 S.Ct. 1792, 1798, 18 L.Ed.2d 1027, 1035.

> First, if it can reasonably be concluded that the employer's discriminatory conduct was "inherently destructive" of important employee rights, no proof of an antiunion motivation is needed and the Board can find an unfair labor practice even if the employer introduces evidence that the conduct was motivated by business considerations. Second, if the adverse effect of the discriminatory conduct on employee rights is "comparatively slight," an antiunion motivation must be proved to sustain the charge if the employer has come forward with evidence of legitimate and substantial business justifications for the conduct. Thus, in either situation, once it has been proved that the employer engaged in discriminatory conduct which

could have adversely affected employee rights to _some_ extent, the burden is upon the employer to establish that he was motivated by legitimate objectives since proof of motivation is most accessible to him. (Emphasis in original.)

The payment for seventeen days of unworked time is not so insignificant that the teachers will not reflect before participating in future strikes. The hearing examiner estimated the cost to the District to be approximately $40,000 or $2,000 per employee. There have been many decisions that have found unlawful interference with the right to strike under similar circumstances. NLRB v. Great Dane, supra (grant of vacation benefits to only nonstrikers was an unfair labor practice); NLRB v. Erie Resistor Corp. (1963), 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308 (grant of super seniority to nonstrikers was an unfair labor practice); George Banta Co., Inc., Banta Div. v. NLRB (D.C. Cir. 1982), 686 F.2d 10 cert. den. (1983), 460 U.S. 1082, 103 S.Ct. 1770, 76 L.Ed.2d 344 (grants of preferential reinstatement and seniority rights to employees who abandoned a strike early was an unfair labor practice.); Soule Glass and Glazing Co. v. NLRB (1st. Cir. 1981), 652 F.2d 1055 (a 25¢ per hour wage increase to employees working as of the first day of a strike was an unfair labor practice.); NLRB v. Swedish Hospital Medical Center (9th Cir. 1980), 619 F.2d 33 (granting a one day vacation to non-strikers, those who returned early and those hired during the strike was an unfair labor practice); NLRB v. Rubatex Corp. (4th Cir. 1979), 601 F.2d 147 cert. den. (1979), 444 U.S. 928, 100 S.Ct. 269, 62 L.Ed.2d 185 (bonuses of of $100 to $25 for those who worked during the strike paid after the strike was over were an unfair labor practice.); NLRB v. Frick Co., (3d Cir. 1968), 397 F.2d 956 (refusing vacation pay to strikers while paying non-strikers

19

was an unfair labor practice.); Aero-Motive Manufacturing Co. (1972), 195 NLRB 790, 79 LRRM 1496, enf'd, (6th Cir. 1973), 475 F.2d 27, ($100. bonus to those who worked through a strike, not awarded or announced until after the strike was an unfair labor practice.). The Court in Aero-Motive stated that by distinguishing "solely on the basis of who engaged in protected, concerted activity and who did not." such payments ". . . not only created a divisive wedge in the work force, but also clearly demonstrated for the future the special rewards which lie in store for employees who choose to refrain from protected strike activity." Aero-Motive, 195 NLRB at 792, 79 LRRM at 1498. I would adopt the rationale of Aero-Motive and conclude that the conduct of the School District was inherently destructive of the employees right to strike. Further, the business justification advanced by the School District does not constitute a legitimate substantial business necessity. The District received two letters from counsel for one of the teachers claiming he was due compensation for eighteen days although the terms of the agreement were, "to the completion of the school year" which ended June 4th. Further, the business necessity advanced by the School District does not explain why all twenty teachers were paid for the remaining seventeen days, even though three of those teachers did not work and were not paid for June 4th.

I would reverse the decision of the District Court and affirm the decision of the BPA.

_William E. Hunt_
Justice

20

Mr. Justice John C. Sheehy and Mr. Justice Frank B. Morrison concur with the above dissent.

_____John C. Sheehy_____

_____Frank B. Morrison_____
Justices

21