MR. JUSTICE GULBRANDSON
delivered the Opinion of the Court.
The Montana Board of Personnel Appeals (the BP A) and the Missoula County High School Education Association (MCHSEA) appeal a Missoula County District Court order which ruled that the Missoula County High School District (the School District) did not commit an unfair labor practice in violation of Section 39-31-401, MCA. The District Court order reversed a BPA decision that the School District violated Section 39-31-401, MCA, by paying certain non-striking teachers for eighteen days of work where those teachers had agreed to work eighteen days but actually worked only one day. The issues on appeal are whether the District Court erred by reversing; (1) the BPA’s conclusion of law that the School District’s conduct was not justified by a legitimate, substantial, business necessity; (2) the BPA’s conclusion of law that the School District’s action was inherently destructive of protected labor rights; and (3) the BPA’s finding of fact that the non-striking teachers were not available and on-call after June 4, 1981. We affirm.
MCHSEA is the recognized exclusive bargaining representative of the School District’s non-supervisory certificated or licensed employees. On May 11, 1981, MCHSEA went on strike against the School District. The School District did not attempt to operate the Missoula schools during the first week of the strike. On June 1,1981, the School District superintendent sent a letter to all members of the bargaining unit. In pertinent part, that letter stated:
“The school district has just received definite legal advice that- our schools must be open for 180 days in the 1980-81 school year or we will lose $1,275 million in state aid.
“. . . A $1,275 million cut would necessarily mean much larger class sizes, reduced curricular and extra-curricular offerings.
“Schools must open June 4, 1981 if this community is to maintain the quality of our school program for the next year . . .
*52 “High schools will open on June 5th for freshman, sophomore and junior classes ... All high school teachers should notify their principal by 4:00 p.m. June 3, 1981 indicating a willingness to work commencing with a PIR day at 8:00 a.m. June 4, 1981 . . .
“Teachers returning June 4th to completion of the school year shall receive for the 1980-81 school year an average 10.6% increase as per the attached salary schedule which includes increments and horizontal changes. This payment will be retroactive to August 27, 1980. All fringe benefits including insurance for June will be paid.”
Twenty teachers notified the School District’s administration that they would return to work if the School District attempted to operate. The School District opened the Missoula schools on June 4, 1981. Three teachers who had agreed to return did not do so because of either illness or family emergency. After the first day and with what is described as good and sufficient reasons, the School District’s Board of Trustees determined it would be inappropriate to continue the operation of the schools. The School District made no further attempt to operate the schools for the balance of the 1980-81 school year.
In April 1982, a Missoula attorney, representing one of the teachers who returned to work, sent a letter to the Missoula County High School Board of Trustees. The letter stated that the School District superintendent’s June 1 letter was an offer of employment for a specific term; that the School District did not reserve the right to terminate the offer or any agreement arising therefrom; that, in the attorney’s opinion, a contractual relationship existed between the School District and the teacher for employment for a specific number of days commencing on June 4, 1981, and ending on the 180th day of the 1980-81 school year; and that the School District breached the agreement by refusing to pay the teacher for work he was prepared to perform. In July 1982, the attorney sent another letter to the School District on behalf of the same teacher. That letter again explained the basis of the teacher’s claim and stated that the teacher was seriously contemplating legal action.
In September 1982, upon the advice of its attorney, the School District paid the twenty returning teachers for the remaining eighteen days they had agreed to teach. The School District did not pay any of the striking teachers for this period.
In October 1982, the MCHSEA filed an unfair labor practice charge with the BPA alleging that the School District had discriminated against those teachers who had supported the strike. The *53 union sought: (1) reimbursement of all amounts deducted from the striking teachers’ salaries because of their participation in the strike, and (2) corresponding contributions to the teachers’ retirement system. In June 1983, counsel for MCHSEA and counsel for the School District agreed to a stipulation of facts which was submitted to the BPA. In December 1983, a hearing officer from the BPA issued his findings of fact, conclusion of law and order ruling that the School District had committed unfair labor practices violating Sections 39-31-401(1) and (3), MCA..
Specifically, the hearing officer ruled that the School District’s conduct was inherently destructive of the public employees’ self-organizational rights; that there was no substantial and legitimate business justification for the School District’s actions; and that the non-striking teachers were not on-call during the seventeen days in question. The School District filed exceptions to the hearing officer’s decision with the BPA. The full BPA held an oral argument on this case in March 1984. In June 1984, the BPA issued its final order adopting the hearing examiner’s findings of fact and conclusions of law. The BPA ordered the School District to stop violating Section 39-31-401(1) and (3), MCA, and fashioned two alternative remedies to compensate the striking teachers.
In July 1984, the School District filed a petition for judicial review and for declaratory judgment with the Missoula County District Court. The BPA and the MCHSEA filed answers and the District Court, sitting without a jury, heard oral arguments in June 1985. In November 1985, the court entered its findings of fact, conclusions of law and order. The court made the following conclusions of law: in view of the evidence, the BPA clearly erred in finding that the teachers did not make themselves available and did not remain on-call after June 4, 1981; the BPA abused its discretion and committed an error of law by concluding that the School District was under no obligation to pay the teachers for more than one day of work; the BPA abused its discretion and committed an error of law in concluding that the payment to the teachers was inherently destructive of protected rights and, therefore, no proof of anti-union motivation was required; and that the BPA abused its discretion and committed an error of law by concluding that the School District’s conduct was clearly prohibited under Section 39-31-401, MCA. This appeal followed.
Section 39-31-401, MCA, provides in part:
“It is an unfair labor practice for a public employer to:
*54 “(1) interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in 39-31-201;
“(3) discriminate in regard to hire or tenure of employment or any term or condition of employment in order to encourage or discourage membership in any labor organization; however, nothing in this chapter or in any other statute of this state precludes a public employer from making an agreement with an exclusive representative to require, as a condition of employment, that an employee who is not or does not become a union member, must have an amount equal to the union initiation fee and monthly dues deducted from his wages in the same manner as checkoff of union dues; . . . Section 39-31-201, MCA, provides:
“Public employees shall have and shall be protected in the exercise of the right of self-organization, to form, join, or assist any labor organization, to bargain collectively through representatives of their own choosing on questions of wages, hours, fringe benefits, and other conditions of employment, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection free from interference, restraint, or coercion.”
These statutes are virtually identical to parts of the federal National Labor Relations Act (NLRA), 29 U.S.C. Section 157 and Section 158. This Court and the BPA both look to National Labor Relations Board and federal court interpretations of the NLRA for guidance in interpreting the equivalent Montana statutes. Teamsters, Etc. v. St. Ex rel. Bd. of Personnel (1981), 195 Mont. 272, 635 P.2d 1310; State v. Dist. Court of Eleventh Jud. Dist. (1979), 183 Mont. 223, 598 P.2d 1117.
Where, as here, a district court reviews an agency decision, the standard of review is set forth in the Montana Administrative Procedure Act at Section 2-4-704, MCA. The relevant portions of that statute state:
“(2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: “(a) in violation of constitutional or statutory provisions;
“(b) in excess of the statutory authority of the agency;
“(c) made upon unlawful procedure;
*55 “(d) affected by other error of law;
“(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
“(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion, or
“(g) because findings of fact, upon issues essential to the decision, were not made although requested.”
Addressing the statute, this Court has stated:
“ [Findings of fact by an agency have been subject to a ‘clearly erroneous’ standard of review by the courts . . . Conclusions of law are subject to an ‘abuse of discretion’ review. These standards differ due to the agency’s expertise regarding the facts involved and the court’s expertise in interpreting and applying the law. (Citations omitted.)”
City of Billings v. Billings Firefighters (1982), 200 Mont. 421, 430, 651 P.2d 627, 632.
The BPA held that the School District had violated Subsections (1) and (3) of Section 39-31-401, MCA. Under the equivalent federal statutes (29 U.S.C. Section 158(a)(1) and (3)), any violation of subsection (3) necessarily includes a derivative violation of subsection (1). N.L.R.B. v. Swedish Hospital Med. Center (9th Cir. 1980), 619 F.2d 33, 35. Subsection (1) “was intended as a general definition of employer unfair labor practices. Violations of it may be either derivative, independent, or both.” Fun Striders, Inc. v. N.L.R.B. (9th Cir. 1981), 686 F.2d 659, 661. In this case, the BPA did not specify whether the subsection (1) violation was derivative from the subsection (3) violation or whether it was an independent violation. However, language in the hearing examiner’s opinion indicates that he considered there to be an independent violation of Section 39-31-401(1), MCA. Thus, we proceed as if the BPA had found an independent violation of Subsection (1).
Section 39-31-401(3), MCA, makes it an unfair labor practice for a public employer to “discriminate in regard to hire or tenure of employment or any term or condition of employment in order to encourage or discourage membership in any labor organization . .. .” Addressing the federal counterpart to this section, the United States Supreme Court stated:
“[T]he intention was to forbid only those acts that are motivated by an anti-union animus . . . But an employer may take actions in the course of a labor dispute that present a complex of motives . . . and it is often difficult to identify the true motive.
*56 “In these situations the Court has divided an employer’s conduct into two classes . . . Some conduct is so ‘inherently destructive of employee interests’ that it carries with it a strong inference of impermissible motive ... In such a situation, even if an employer comes forward with a nondiscriminatory explanation for its actions, the Board ‘may nevertheless draw an inference of improper motive from the conduct itself and exercise its duty to strike the proper balance between the asserted business justifications and the invasion of employee rights in light of the Act and its policy.’ ... On the other hand, if the adverse effect of the discriminatory conduct on employee rights is ‘comparatively slight,’ an antiunion motivation must be proved to sustain the charge if the employer has come forward with evidence of legitimate and substantial business justifications for the conduct.’ (Citations omitted.)”
Metropolitan Edison Co. v. NLRB (1983), 460 U.S. 693, 700-701, 103 S.Ct. 1467, 1473, 75 L.Ed.2d 387, 396. In this case, the BPA found that the School District had no substantial, legitimate business justification for making the payments to the teachers and that the payments were inherently destructive of the striking teachers’ union interests. Thus, the BPA found a violation of Section 39-31-401(3), MCA.
The first issue is whether the District Court erred by reversing the BPA’s conclusion of law that the School District had no legitimate business justification for making the payments. We first note that although the BPA and the hearing examiner characterized this conclusion as a finding of fact, it is more properly seen as a conclusion of law. Thus, that conclusion is subject to the “abuse of discretion” standard of review.
The stipulated facts show that the payment was made only after an attorney for one of the teachers threatened legal action. Two letters from that attorney are attached as exhibits to the stipulated facts. The attorney asserted that the superintendent’s letter was an offer of employment for a specific number of days; i.e. from June 4th to the completion of the 180th day of the school year. The attorney charged that the teacher was prepared to perform for the term of the contract and that the School District breached the agreement by refusing to pay him for the work he was prepared to perform. At the hearing before the full Board of Personnel Appeals, board members discussed and considered a letter from the School District’s superintendent. Although that letter was not part of the stipulated facts, no objection was made to consideration of that letter and it is properly *57 part of the record before this Court. See Section 39-31-409(3), MCA. The superintendent’s letter shows (1) that an attorney advised the School District that the teacher’s claim was valid and (2) that the School District decided not to litigate the claim because of the increased cost to do so. The letter expressed concern that if the School District was unsuccessful in contesting the claim, the court would order the School District to pay the teacher’s attorney’s fees which would increase the loss by 30-40%. The hearing examiner disagreed with the School District and found that there was no obligation to pay the teachers except for the one day they worked. Thus, the hearing examiner and the BPA concluded there was no business justification for paying the claim. We agree with the District Court that the conclusion was an abuse of discretion.
We need not decide for the purposes of this opinion whether the School District or the BPA correctly determined the legitimacy of the teacher’s claim.
“The legitimacy of the [School District’s] conduct for purposes of the analysis prescribed by Great Dane depends not on the truth of its assertions regarding its contractual obligations but rather on the reasonableness and bona fides with which it held its beliefs.
“The First Circuit’s decision in NLRB v. Borden, Inc., Borden Chemical Division, 600 F.2d 313 (1st Cir. 1979), is persuasive in this regard. In Borden, the employer withheld accrued vacation pay because of the employees’ strike activity until after the contractual vacation period had expired. The Board rejected the employer’s assertion that it was acting pursuant to a contractual obligation, i.e., ‘employees shall not be paid vacation pay in lieu of vacation,’ and concluded that the denial of vacation benefits was inherently destructive of the employees’ rights. The First Circuit remanded the case, declaring:
“ ‘Borden did come forward with evidence of a business justification for its conduct, namely, the terms of the collective bargaining agreement and past practice.’
“The Board found this reason invalid because its interpretation of the contract differed from that of Borden’s. This, however, is not a question of contract interpretation. The Board had a duty to determine whether Borden was motivated by its reliance on the collective bargaining agreement or by anti-union animus when it withheld the accrued vacation benefits. We caution the Board that it is neither our function nor the Board’s to second-guess business deci *58 sions. ‘The Act was not intended to guarantee that business decisions be sound, only that they not be the product of antiunion motivation’. (Emphasis in original.) (Citations omitted.)”
Vesuvius Crucible Co. v. N.L.R.B. (3rd. Cir. 1981), 668 F.2d 162, 167. See also Stokely-Van Camp, Inc. v. N.L.R.B. (7th Cir. 1983), 722 F.2d 1324.
In Vesuvius, the employer, interpreting a collective bargaining agreement, refused to pay allegedly accrued vacation benefits to any employee, striking or nonstriking. The NLRB found that this interpretation of the collective bargaining agreement was incorrect, that the employees’ right to the benefits had accrued, and that the employer committed unfair labor practices in refusing to pay. The Third Circuit reversed finding the company’s interpretation reasonable and arguably correct. The Vesuvius court found that the NLRB overstepped its authority in formulating its own interpretation of the contract.
The instant case is similar to Borden and Vesuvius. Here, the hearing examiner disagreed with the School District’s interpretation of the contract but he did not address the reasonableness of that interpretation. We find that the School District made a reasonable interpretation of the contract and paid the claim out of a bona fide belief that the claim was valid. The School District paid the claim only after the teacher threatened to file suit to collect. Moreover, the School District’s attorney advised the School District that this was a legal claim which should be paid. Finally, we find that the School District’s interpretation of the contract was arguably correct. Therefore, we affirm the District Court’s reversal of the BPA’s conclusion that the School District had no substantial, legitimate business justification for the payment.
The second issue is whether the lower court properly reversed the BPA’s conclusion that the School District’s action was inherently destructive of protected labor rights. Inherently destructive conduct, in this context, is conduct which carries with it, “. . . unavoidable consequences which the employer not only foresaw but which he must have intended” and thus bears “its own indicia of intent.” (Citation omitted.) N.L.R.B. v. Great Dane Trailers (1967), 388 U.S. 26, 33, 87 S.Ct. 1792, 1797, 18 L.Ed.2d 1027, 1034. The Ninth Circuit Court of Appeals describes those cases finding inherently destructive conduct as:
“[C]ases involving conduct with far reaching effects which would hinder future bargaining, or conduct which discriminates solely *59 upon the basis of participation in strikes or union activity. Examples of inherently destructive activity are permanent discharge for participation in union activities, granting of superseniority to strike breakers, and other actions creating visible and continuing obstacles to the future exercise of employee rights. (Citation omitted.)” Portland Willamette Co. v. N.L.R.B. (9th Cir. 1976), 534 F.2d 1331, 1334. The Portland Willamette Co. court declined to find inherently destructive conduct in an employer’s proposal, during a strike, to grant a retroactive pay increase to workers who had returned to, and remained at, work by a certain date.
General Electric Co. (1948), 49 NLRB 510, 23 LRRM 1094, supports a conclusion that there was no inherently destructive conduct in this case. In General Electric the employees engaged in a strike and the employer, upon the strike’s termination, paid full wages for the entire strike period to those employees who had indicated a willingness to work during the strike. Although the compensated employees actually did not work during the strike, the NLRB found that those workers were “on call” and available for work. The NLRB found no unlawful disparity of treatment in paying full wages to those workers for the strike period.
In this case, the BPA found that the teachers were not on-call and did not make themselves available for work after the first day. The District Court ruled that this finding was clearly erroneous. The propriety of this ruling is the third issue on appeal. The facts support an inference that the teachers did make themselves available to work the entire period in question. The superintendent’s letter soliciting teachers (the offer) clearly contemplated that the teachers would work until the completion of 180 school days, i.e., for eighteen more days. By showing up for work the first day, the teachers accepted the offer and implicitly agreed to work, and make themselves available, for eighteen days.
The BPA found that the School District discriminated against the strikers solely on the basis of union activity. We disagree. The School District discriminated in favor of the non-strikers because they took the affirmative step of agreeing to teach for eighteen days and forego other options for those days. Moreover, the payments were made more than a year after the strike and only after the threat of a lawsuit. The School District’s conduct arose out of a unique situation and is not the equivalent of permanently discharging strikers or granting superseniority to non-strikers. The inher *60 ently destructive label simply does not fit this conduct. Therefore, we uphold the District Court’s reversal of the BPA on this point.
We concede that the School District’s conduct may have a comparatively slight impact on employee rights. Teachers may hesitate slightly in joining future strikes. To find a violation of Section 39-31-401(3), MCA, where the discriminatory conduct has comparatively slight effect, “[A]n antiunion motivation must be proved to sustain the charge if [as here] the employer has come forward with evidence of legitimate and substantial business justifications for the conduct.” Metropolitan Edison Co., 460 U.S. at 701, 103 S.Ct. at 1473. The BPA concedes, and the record shows, that there is no evidence that the School District acted with an anti-union motive. Therefore, we hold that there was no violation of Section 39-31-401(3), MCA.
Finally, we address the issue of whether there was an independent, as opposed to derivative, violation of Section 39-31-401(1), MCA.
“Such a violation is established by showing:
“(1) that employees are engaged in protected activities, (citation omitted);
“(2) that the employer’s conduct tends to ‘interfere with, restrain, or coerce employees’ in those activities, (citation omitted); and
“(3) that the employer’s conduct is not justified by a legitimate and substantial business reason, (citation omitted).”
Fun Striders, Inc., 686 F.2d at 661-662. We held above that the employer’s conduct was justified by a legitimate and substantial business reason. Therefore, there can be no independent violation of Section 39-31-401(1), MCA.
The District Court properly reversed the BPA order finding unfair labor practices.
Affirmed.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICE WEBER and THE HONORABLE HENRY C. LOBLE, District Court Judge, sitting for MR. JUSTICE HARRISON, concur.